AMANDA L. FRENCH, BY HER NEXT FRIEND AND
GUARDIAN, THOMAS C. HOWARD, V. ALBERT
CASE ET AL.

*Mortgage—Fraud—Equity.*

This case involves the construction of a bond and mortgage given
for the purchase price of a farm, and it is held that the whole
context of the papers in the case, and all the circumstances
surrounding the sale of the farm, and the situation of the par-
ties when it was made, show that the grantors and mortgagees
never contemplated parting with the title to their property,
except upon the understanding upon their part that a good,
comfortable living and maintenance was to be provided for
them so long as they should both live, and, if such was not
the understanding on the part of the mortgagor, then the minds
of the parties never met, and no valid agreement between them
was ever made. The case involves questions of fact purely,
and reference is had to the opinion for a full understanding
of the same.

Appeal from Washtenaw. (Kinne, J.) Argued April
9 and 10, 1889. Decided October 25, 1889.

Foreclosure of mortgage. Complainant appeals from
decree dismissing bill. Reversed, and circuit judge
directed to enter decree for foreclosure, etc. The facts
are stated in the opinion.

*E. Baldwin* and *Willis Baldwin,* for complainant.

*Sawyer & Knowlton,* for defendant Case.

[The points of counsel are fully stated in the opinion.
—REPORTER.]

SHERWOOD, C. J. This action is brought to foreclose
a mortgage given by Albert Case and Mary Case, his
wife, on about 52 acres of land lying in the county of

Washtenaw, to Harvey French and Amanda, his wife, on October 15, 1875, which mortgage is accompanied by a bond as collateral security thereto.

The bond was as follows:

"Know all men by these presents, that I, Albert Case, am held and firmly bound unto Harvey French and Amanda French in the sum of two thousand dollars, lawful money of the United States of America, to be paid to the said Harvey French and Amanda French, or their certain attorney, executors, administrators, or assigns, to which payment well and truly to be made I, Albert Case, hereby bind myself, my heirs, executors, and administrators, firmly by these presents.

"Sealed with my seal. Dated the fifteenth day of October, in the year of our Lord one thousand eight hundred and seventy-five.

"The condition of this obligation is such that if the above-bounden Albert Case, his heirs, executors, administrators, or assigns, or any of them, shall and do well and truly pay, or cause to be paid, unto the above-named Harvey French and Amanda French, their certain attorney, executors, administrators, or assigns, the just sum of two thousand dollars, and interest at seven per cent. (said interest to be paid annually), within eight years from the first day of May, A. D. 1875, without any fraud or further delay, then the above obligation to be void, or else to be and remain in full force and virtue.

"The further condition of this obligation is such that if the above-bounden Albert Case shall and does well and truly pay or cause to be paid unto the above-named Harvey French and Amanda French the said sum of two thousand dollars, and the interest annually, at 7 per cent., according to the specifications hereinafter mentioned, to wit: So much of the above-mentioned two thousand dollars, aside from the interest, as the said Harvey and Amanda French, or either of them, may need for their support and comfort during their life-time, or within eight years after the 1st day of May, A. D. 1875, at which time the said sum of two thousand dollars, and interest to commence on the said 1st day of May, A. D. 1875, is to be paid in manner and form as follows: The balance due on the said sum of two thousand dollars, with the interest due thereon at the expiration of the said eight years (commencing on the 1st day of May aforesaid), to be paid as follows, to wit: To Royal French, Joel W. French, twenty per cent.; to Mary Case, twenty per cent.; to Alice Bird, ten per cent.; and to Harmony Russell, ten per cent.; the above-bounden Albert Case having paid Avery Case twenty per cent.; and that the receipt of

said Royal French and Joel W. French, Mary Case, Alice Bird, and Harmony Russell, or either of them, for such proportion of the above-mentioned two thousand dollars as they may receive from the said Albert Case, shall be, and is hereby, declared and acknowledged to be a payment on this bond; but no interest on the said payment to be allowed to the said Case for any moneys he may pay to any of the said payees above mentioned.

"The said sum of two thousand dollars and interest, as before mentioned, that may be due at the death of the said Harvey and Amanda French (after paying the funeral expenses), may be paid, at any time within one year after the death of the said Harvey and Amanda French, to the said parties in the manner and form aforesaid: Provided, the said Harvey and Amanda French should live beyond the said period of eight years from the said 1st of May, A. D. 1875, the said payments to the said Royal French, Joel W. French, Mary Case, Alice Bird, and Harmony Russell shall be made within one year after the death of both Harvey and Amanda French, and not before, unless desired by the said Albert Case; and it is further expressly understood that upon the payment of the aforementioned sums to the said Royal French, Joel W. French, Mary Case, Alice Bird, and Harmony Russell by the said Albert Case, in the manner and form heretofore mentioned, or the majority of them, they shall discharge from record a certain mortgage bearing even date herewith, and executed by Albert Case to Harvey French and Amanda French, and given as collateral security for the payments heretofore mentioned in this obligation."

The mortgage was as follows:

"This indenture, made this fifteenth day of October, in the year of our Lord one thousand eight hundred and seventy-five, between Albert Case and Mary Case, his wife, of the township of York, Washtenaw county, Michigan, of the first part, and Harvey French and Amanda French, of the same place, of the second part, witnesseth:

"That the said parties of the first part, for and in consideration of the sum of two thousand dollars, to them in hand paid by the said parties of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold, released, enfeoffed, and confirmed, and by these presents do grant, bargain, sell, release, enfeoff, and confirm, unto the said parties of the second part, and to their heirs and assigns, forever, all that certain piece or parcel of land known, bounded, and described as follows, to wit: The east half of the east half of the north-east quarter of section thirty-four (34); also the west half of the west half of the west half of the south-west quarter of section thirty-five (35), in township No. four (4) south, of range No. six (6) east, containing

sixty (60) acres of land, more or less,—all lying in the township of York, county of Washtenaw, and State of Michigan, excepting eight (8) acres off from the north end of the first described forty (40) acres, being heretofore deeded by Albert Case and Mary Case to James Delaforce. To have and to hold the above-bargained premises unto the said parties of the second part, their heirs or assigns, for the sole and only proper use, benefit, and behoof of the said parties of the second part, their heirs and assigns, forever.

"Provided, always, and these presents are upon express conditions, that if the said parties of the first part pay to the said parties of the second part the sum of two thousand dollars, and interest at seven per cent., in eight years from the first day of May, A. D. 1875, the interest thereof to be paid annually, and so much of the principal as is necessary and desired for the support and comfort of the said parties of the second part during their life-time, and at the time of the death of the said Harvey and Amanda French, the said parties of the second part, or within one year thereafter, the balance due on the said sum of two thousand dollars, and interest, if any shall be due, to be paid as follows: To Royal French, twenty per cent.; to Joel W. French, twenty per cent.; to Mary Case, twenty per cent.; to Alice Bird, ten per cent.; to Harmony Russell, ten per cent.,—the above-bounden Albert Case having paid Avery French twenty per cent. before the execution of this obligation. The said several payments to be made within eight years, and not until one year after the death of the said Harvey and Amanda French: Provided they, the said Harvey and Amanda French, or either of them, shall live more than eight years, the said balance due on this instrument is not to be paid until one year after the death of the said Harvey and Amanda French, parties of the second part herein.

"It is expressly understood and agreed that the payment of the said percentage to the before-mentioned parties may be made by the said Albert Case at any time, and sums receipted to the said Albert Case by the said parties, or either of them, shall be deducted from the amount due the said parties at the time of the death of the said Harvey and Amanda French; and upon the payments of the said several sums to the said several parties they shall, or a majority of them shall, discharge this mortgage from record,— according to the conditions of a certain bond bearing even date with this mortgage, executed by Albert Case to Harvey French and Amanda French, parties of the second part, as collateral security, then these presents and the said bond shall cease and be null and void; and the said parties of the first part hereby covenant and agree to pay to the said parties of the second part the money aforesaid.

" But in case of the non-payment of the sum of money and interest, or any or either part thereof, at the time and in the manner and at the place above limited and specified for the payment thereof, then the interest thereon shall become principal, and draw interest at the rate aforesaid until paid; and, in case of non-payment of said principal or interest or either at the time limited therefor, it shall and may be lawful for the said parties of the second part, their heirs, executors, administrators, or assigns, to grant, bargain, sell, release, and convey the said premises, with the appurtenances, at public auction or vendue, and on such sale to make and execute to the purchaser or purchasers, their heirs and assigns, forever, good, ample, and sufficient deed or deeds of conveyance in law, pursuant to the statute in such case made and provided, rendering the surplus money (if any there should be) to the said parties of the first part, their heirs, executors, or administrators, after deducting the costs, fees, and charges of such proceedings, vendue, and sale aforesaid. And the said parties of the first part covenant and agree to pay the said parties of the second part, and their assigns, the costs and charges aforesaid, and also twenty-five dollars as an attorney fee should any proceedings be taken to foreclose this indenture.

" In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written."

Said mortgage was given to secure the payment of $2,000, and complainant claims the principal and interest are both due and unpaid, except the sum of $126, which was paid in small sums, at 12 different times, during the years 1882 and 1883.

The bill asks for an accounting as to the amount due upon the bond and mortgage, and that Albert Case be decreed to pay such amount into court, to abide the further order of the court, within a reasonable time after the accounting; and, on making default in so doing, that the mortgaged premises be sold, and that from such payment of the moneys into court, or from the amount arising from such sale when paid into court, so much thereof as shall be necessary for her support during her life-time, and the expenses of suit, may by the order of the court be set aside and applied to that purpose.

Personal service of the subpœna was obtained upon all of the defendants. Defendants Albert Case and Harmony Russell each filed a separate answer. The other defendants were all defaulted. The testimony in the case was taken in open court, in the Washtenaw circuit. Complainant's bill was dismissed, with costs, at the hearing.

The facts in the case are little contested, except that defendant Case denies that he owes anything upon the bond or mortgage. They are substantially as follows: On May 1, 1873, defendant Albert Case purchased of Harvey French his farm for $2,000, and the stock upon the farm for $500. He gave his note for the stock, and gave his note, secured by a mortgage on the farm, for the $2,000. He sold the stock, and with the proceeds paid the $500 note. The note and mortgage were given to Harvey French and Amanda, his wife, jointly, and were made payable in installments, the last falling due in ten years. Two years later the parties made a new arrangement, by which this note was given up, and the mortgage discharged, and in place thereof the bond and mortgage referred to, and which mortgage is now being foreclosed, were given.

It is conceded that when the first mortgage was given Harvey French was 86 years old, and his wife, Amanda, the complainant ward, was 71 years of age; that Albert Case was their son-in-law; that defendants French and Alice Bird and Harmony Russell were their children; and that Charles Case and Dalton Richards, defendants, are children of Mary Case, who since the mortgage was made, and in 1880, died. Complainant alleges that no cause is apparent for making the change in the mortgages. Defendant Case, however, charges it was to keep Royal from obtaining the entire property, and thereby depriving the other children of their just share of the estate, and was brought about through Avery French, who was

a son of the old people, and who shortly thereafter died.

After the making of the first mortgage the old people lived in rooms furnished for them on the farm of their son Royal, and remained there until 1875, not far from the time the second mortgage was made. They then removed to a small house on Case's farm, which they paid Case for building for them. There were two payments of interest upon the bond, indorsed by Harvey French when he died, in 1877, and after his death there appears upon the mortgage an indorsement of $140 as of May 1, 1878, the interest then due. This was not signed by any one. Also there was paid to the complainant, as guardian for Amanda, the $126 heretofore noticed.

Case's wife, Mary, and daughter of the old lady, had been an invalid since 1867, and Amanda, the complainant ward, spent much of her time with Mrs. Case until she died, in 1880. Some time after her daughter's death the old lady became insane, losing her capacity and memory, and in 1881 complainant was duly appointed her guardian, and took the old lady back to her son Royal for care and keeping; and that her care has become great and expensive no one questions, and complainant shows he has not the means in his hands and cannot obtain them necessary for her support, except from said bond and mortgage. It further appears that Case has acquired all the interests of the children in said mortgage except that of Alice Bird.

It is a little difficult to see, on an inspection of this record, why the old people should have made such an arrangement and sale of their farm as they did, so far as their needs, wants, or comforts were concerned. This farm, with a small pension the old gentleman was receiving, appears to have been keeping them comfortably. At any rate, if anything usually desirable for aged and infirm parents, such as the society of children, their

home under the same roof with such children, and the solace and enjoyment which the filial relations ought always to bring to aged and feeble parents from kind and dutiful sons and daughters, was intended to be secured, it was not secured to these parents by the arrangement made; and what seems worse than even this is the fact that, by the arrangement entered into between this son-in-law and these old people, the little property they had —the last means they could resort to to command the attention and secure the respect and services of others to administer to the wants, necessities, and infirmities of age—was taken from their control, and after the lapse of eight years they were to be absolutely deprived of the same, if they or either of them should live so long. And we are asked by the defendant to give these instruments such a construction as will accomplish this result; and no one of all these children or grandchildren appears to protest against such a result being consummated.

That I may not misstate the position of Mr. Case, the defendant, I give him his position in the language of his own learned counsel. Here it is:

"We submit that a fair rendering of this bond and mortgage, construed in the light of surrounding circumstances, is that it becomes due absolutely eight years from its date, but that Case had the right to pay it at any time before it became due. * * * He [Case] entered into no agreement to support the old people. * * * So far as Case is concerned, he was simply paying a debt. * * * He simply recognized the right of the old people and children to agree among themselves to whom and in what manner he should pay his debt, reserving the right to himself to make the payment provided for at any time, within certain limits, at his convenience.

. "Whether the old people had any other estate or not we do not know, nor is it material. If they saw fit to give it all to their children, Mr. Case was not to blame for it, nor ought he to be punished for it; and if any or

all of the children saw fit to relinquish their interest in the mortgage to him for less than might ultimately come to them, in consideration for his advancing it to them before he was forced to, it was not a matter that this complainant can complain of. The children to whom the payments were made were satisfied then, and, so far as appears, are now satisfied with the amounts they received, except possibly Mrs. Russell; * * and Case swears he paid her in full, and when she answers the bill, instead of her answering that there was something due on the mortgage to her mother, she claims it is due to her, * * * and it also appears that on the trial settlement was made with Alice."

Then, as to the law governing the agreement, Case's counsel say:

"We submit, in conclusion, that whatever the purpose of the heirs of Harvey and Amanda French might have been, or of Harvey and Amanda French themselves, it is certain defendant Case was giving a security for the payment of his debt, and not a security for the support of the old people. And when he paid the amount of his debt, in the manner provided for in the instrument evidencing his debt, he was discharged. And a proper construction of all the papers in the case establishes that:

"1. The debt became due absolutely eight years from the date of the bond.

"2. If either Harvey or Amanda lived beyond the period of eight years, Case could retain the principal until the death of the survivor by paying the interest, and so much of the principal as was needed for the support of the survivor, if any; but none of the parties could force Case to retain the money, nor pay interest thereon, beyond the eight years.

"3. Case had the right to pay the entire $2,000 to the children at any time before it became due, by paying them, respectively, the per cent. of the $2,000 mentioned in the bond, or any less amount the parties might agree upon, and a payment to them discharged the bond *pro tanto;* but if he paid before the eight years he would still be liable to pay to Harvey and Amanda—

"*First.* The interest; and, *second,* so much of the principal as they should need during said eight years.

"4. At the expiration of the eight years so much of

the principal and interest as should then remain unpaid belonged to the children, and became payable to them, and not to Harvey and Amanda. If Harvey and Amanda should live beyond the period of eight years, the balance due at the expiration of eight years, if any, need not be paid to the children until one year after the death of the survivor, unless defendant Case desired to pay it sooner.

"5. During the period between the expiration of the eight years and the death of Harvey and Amanda, defendant Case might, in case the survivor needed it, pay whatever balance was found to be due at the expiration of the eight years, if any, to the survivor. Therefore whatever was left unpaid, if any, at the expiration of eight years, whether for principal or interest, became due to the children, and this complainant had no interest whatever in the matter, and could not, therefore, maintain this or any other suit on that bond, after her interest in it had ceased.

"Nor can this suit be maintained by the guardian for the benefit of Royal H. French or anybody else to recover the amount they or, either of them may have expended for the support of Amanda or Harvey French during the life of said bond and mortgage. It will be seen that the bond provides that, at the expiration of the eight years, 'the balance due on the said sum of $2,000, *with the interest due thereon* at the expiration of the said eight years, commencing May 1, aforesaid, to be paid as follows,' etc. It is manifest this includes all arrears of interest as much as it does the principal still unpaid, and it is all made payable, at the expiration of eight years, to the children absolutely. Not only so, but the bond provides that, upon the payment to Royal French, Joel French, Mary Case, Alice Bird, and Harmony Russell, they, or the majority of them, shall discharge the mortgage from record."

Here we have the defendant Case's position, both upon the law and upon the facts, as his views of the morality and equity of the case. Case himself says he bought the property of these old people upon speculation, and that at the expiration of eight years he had a right to pay off the children, if he so elected, all that might be due on the mortgage, including unpaid·back interest, and entirely·

cut off the old lady from further support from the mortgage fund, as well as the accrued interest thereon, even before the expiration of the eight years.   It is the claim of the complainant:

" 1. That in construing the bond and mortgage together no such election can be maintained by Case.

" 2. If the literal construction is so held, the testimony shows that no such election was made by Case as would in any way bind the complainant ward or affect her interest.

" 3. That the claimed election, under the circumstances, was so inequitable and unjust that no court of equity would allow it to be resorted to in defeating the rights of Mrs. French.

" 4. That, in any event, the complainant would be entitled to the back interest accruing before May 1, 1883."

I think the third point of complainant is all that is necessary to consider further in this case.   The whole context of the papers in this case, and all the circumstances surrounding the sale of this farm, and the situation of the parties when it was made, show clearly, to my mind, that these old people who made the deed never contemplated parting with the title to their property, except upon the understanding upon their part that a good, comfortable living and maintenance was to be provided for them so long as they both should live, and, if such was not the understanding on the part of the defendant Case, then the minds of the parties never met, and no valid agreement between them was ever made.

This record, I think, very clearly presents a case where the children have become impatient of the delay, caused by the longevity of the parents, in coming into possession of an anticipated inheritance, of which their treatment of the ancestors would seem to show them utterly unworthy.   The only interests apparently consulted in all the treaties had between these children and kindred

has been that pertaining to themselves, and really without any regard to the welfare of these aged parents.

The old gentleman, Harvey French, is gone, but his wife, for whose welfare he undoubtedly in all the property arrangements he made had the greatest solicitude, still remains and is comparatively helpless, and the time has come when it has become necessary to use the property for the purpose for which he unquestionably supposed he had it safely secured and appropriated when he died, viz., for the taking care of and supporting his wife when she was no longer able to do it herself; and I think that is the fair construction of the provisions of this bond and mortgage when read, as counsel for defendant Case desire them read, in the light of all the circumstances existing at the time they were made, as understood by the old people, and as I have no question they were understood by the defendant Case; that he at least knew how the old people understood them, and knowing this, after executing the papers, a court of conscience will not allow him to urge any other understanding or construction of them, when neither of them can speak for themselves.

This requires that the decree at the circuit should be reversed, and that the circuit judge be directed to enter a decree of foreclosure in the case for the purposes prayed in the bill of complaint, with costs of both courts to complainant. The sum for which decree should be taken is $2,000, and interest thereon, less the sums indorsed upon said bond and mortgage hereinbefore mentioned and referred to.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. LONG, J., did not sit.